# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:16-CR-54-TLS |
| | ) | |
| MARLON COLE | ) | |

## OPINION AND ORDER

After obtaining a search warrant, police entered Defendant Marlon Cole's apartment and found drugs and related paraphernalia, cash, and firearms. As a result, the Defendant was charged with drug trafficking and firearm offenses. The Defendant has moved to suppress the evidence on the ground that the affidavit submitted with the search warrant application did not establish probable cause to believe that evidence of a crime was located at the Defendant's apartment. He also asserts that evidence police recovered from a locked safe should be suppressed because the search warrant affidavit did not contain any information related to a safe. For the reasons set forth in this Opinion and Order, the Court is unpersuaded by the Defendant's arguments and denies his Motion to Suppress.

## PROCEDURAL BACKGROUND

The Defendant is charged in a three-count Indictment with possessing with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(a), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On September 16, 2016, the Defendant filed a Motion to Suppress [ECF No. 15]. In this Motion, the Defendant seeks the suppression of evidence obtained during the execution of a search warrant. The Motion challenges the Search

Warrant Affidavit completed by Detective James R. Chambers of the Fort Wayne Police Department, arguing that it did not contain sufficient facts upon which the state court judge could have found probable cause to search the apartment for evidence of drug trafficking. The Defendant asserts that the search warrant was based, in part, on information from a confidential tipster whose reliability had not been confirmed. Although the Affidavit also recounts two controlled drug purchases, the Defendant asserts that they do not help because insufficient details are provided about the controlled purchases or the person who made them, and because the last controlled purchase occurred a month before the warrant was issued. The Defendant argues that the Affidavit failed to establish that the Defendant was residing in or otherwise associated with the apartment. Finally, the Defendant contends that the search warrant did not give officers permission to search a safe that they found inside the apartment because the Affidavit did not particularly mention a safe.

## ANALYSIS

When an affidavit is the only evidence presented to a judge to support a search warrant, as it is here, the validity of the warrant rests solely on the strength of the affidavit.[1] *United States v. Orozco*, 576 F.3d 745, 748 (7th Cir. 2009). A search warrant affidavit establishes probable cause when, based on the totality of circumstances, it "sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Mykytiuk*, 402 F.3d 773, 776 (7th Cir. 2005) (citing *United States v. Peck*, 317 F.3d 754,

---

[1] The Defendant's Motion requests an evidentiary hearing. However, because his Motion attacks only the Affidavit, and because he does not indicate why a hearing is necessary to rule on his Motion, the Court finds that a hearing is not warranted at this time.

755–56 (7th Cir. 2003), and *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Probable cause denotes more than a mere suspicion, but does not require certainty." *United States v. Fleischli*, 305 F.3d 643, 651 (7th Cir. 2002) (quotation marks and citations omitted). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (ellipsis and brackets omitted). "The judge, however, may not solely rely upon 'conclusory allegations' or a 'bare bones' affidavit when issuing a warrant." *Id.* A reviewing court will "defer to the determination of the warrant-issuing judge that probable cause existed so long as 'there is substantial evidence in the record supporting the judge's decision.'" *United States v. Farmer*, 543 F.3d 363, 377 (7th Cir. 2008) (quoting *United States v. Koerth*, 312 F.3d 862, 865 (7th Cir. 2002)).

### A. Insufficient Corroboration

The Defendant asserts that the search warrant should not have issued because it was based, in part, on information from confidential tipsters whose reliability was not confirmed. Viewed in its totality, the Affidavit contains much more information than an informant's tip. It contains information that law enforcement obtained over the course of several weeks in April and May 2016 that led them to suspect that the Defendant was dealing heroin. First, a confidential informant directed Detective Chambers to the back of the Third Street apartment and a gold colored GMC Yukon registered to Racquel Mendez. He stated that a "large black male" drove the vehicle and sold several grams of heroin at a time to people using the Burger

Dairy as a meeting location. Detective Chambers, while conducting his own surveillance observed a second vehicle, an older model black Chevrolet Suburban or Tahoe. This vehicle was also registered to Racquel Mendez. About one year earlier the vehicle had been pulled over with the Defendant, Marlon Cole, inside. A few days later, Detective Chambers interviewed a confidential tipster who stated he had purchased heroin from a large black male named Marlon who drove a silver Yukon or black Tahoe. Less than two weeks later, a caller used the Drug Tip Hotline to identify the Third Street address as a location where the caller believed meth was being dealt based on the traffic patterns and a man with no teeth frequenting the address. The tipster also stated that a silver GMC truck was always coming and going.

The Affidavit then provided details of two controlled drug purchases by a confidential informant on June 10 and 23, 2016. These controlled buys corroborated the informant's statement that he could buy heroin from a black male he knew as Marlon, and that he could buy it from Marlon's residence on Third Street. *See United States v. Rosario*, 234 F.3d 347, 351 (7th Cir. 2000) (a tip from a confidential informant of unproven reliability may support a finding of probable cause as long as the affiant's investigation substantially corroborates the informant's credibility). "Controlled buys add great weight to an informant's tip." *United States v. McKinney*, 143 F.3d 325, 329 (7th Cir. 1998) (noting that police did not simply rely on the tip of an untested informant, but "boosted" his reliability with controlled buys). These controlled purchases also corroborated the information provided by the sources.

Contrary to the Defendant's argument, "how the confidential informant knew Marlon Cole or why he/she was able to purchase heroin from him" was not "vital information" that was needed to assess the credibility of the informant. (Def.'s Resp. 6, ECF No. 19.) The important

4

fact was that he was able to purchase the heroin, just as he stated. The Court also disagrees with the Defendant's assessment that the Affidavit is deficient because it does not provide any details "regarding what if anything occurred" within the Third Street residence. (Def.'s Resp. 6.) During each purchase, the confidential informant went inside the Third Street apartment with $300 of buy money, stayed for just a few minutes, and left with heroin. Accordingly, what happened inside the apartment, for purposes of determining whether the Affidavit provided a fair probability that evidence of a crime would be found inside the apartment, was an exchange of money for drugs. These transactions were monitored and recorded by law enforcement.

During the first transaction, a detective observed the confidential informant being freely let into the apartment upon knocking on the door. During the second sale, a detective observed the Defendant and the confidential informant enter the apartment together. The Defendant, driving the GMC Yukon, had just returned to the apartment from the Burger Dairy. Although the detectives could not see the transactions inside the apartment, this does not render the Affidavit account of what transpired unreliable. For each controlled buy, the Affidavit stated that the informant was checked for contraband before going to the apartment, given marked money, outfitted with an electronic monitoring device, and observed going inside his apartment for a short period of time with the money and then returning to the police with suspected heroin in his possession. This was more than was necessary to corroborate the confidential informant's statement. *Cf. McKinney*, 143 F.3d at 329 (noting that although police could have done more to boost the informant's reliability during controlled drug purchases by conducting a full search and fitting him with surveillance equipment, probable cause only requires a reasonable probability that evidence of a crime can be found at a certain location). Additionally, after the first

5

controlled purchase, the informant identified Marlon Cole from a six-person photo array as the seller. This informant also informed Detective Chambers that the Defendant kept a handgun in the apartment, which the informant had seen.

The Defendant contends that the Affidavit is "devoid of any detail about Marlon Cole and his association with" the Third Street address. (Def.'s Resp. 7, ECF No. 19.) The Defendant does not elaborate on this point, and the Court is left wondering what further connection the Defendant believes was necessary.

**B.     Staleness**

The Defendant argues that the judge should have considered the information in the Affidavit unreliable because it was stale. He notes that the Affidavit was signed on July 19, 2016, but the latest controlled drug buy took place a month earlier on June 23, 2016.

There is no "bright-line test" for determining when information is stale, *United States v. Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008) (quoting *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)), and the argument that information is stale takes on different meanings in the context of different offenses, *id.* In all cases, "the age of inculpatory information is only one factor that magistrates should consider in determining whether probable cause exists." *United States v. Spry,* 190 F.3d 829, 836 (7th Cir. 1999). "Passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity." *United States v. Pless*, 982 F.2d 1118, 1126 (7th Cir. 1992) (citing *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991)). Ultimately, a judge should not hesitate to issue the warrant if other factors demonstrate the reliability of the information and that the object will still be on the premises.

*Pless*, 982 F.2d at 1126; *United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir. 1987). This case involves evidence of ongoing criminal activity.

Read in a common sense manner, nothing in the Affidavit suggests that the two controlled drug purchases, conducted thirteen days apart, were isolated anomalies. Rather, the Affidavit contained sufficient information to allow the judge to reasonably conclude that the criminal activity at the Third Street address was ongoing, and that contraband or evidence of drug trafficking would still be on the premises. First, the judge had the information from the tipsters and the confidential informant in April and May about ongoing drug dealing activity. An anonymous tipster relayed that he believed drugs were being dealt from the location, citing heavy traffic after midnight and in the early evening hours. Then, in July, another confidential informant was able make two controlled purchases from the same residence that was the subject of the previous tips. For both purchases, the confidential informant was freely let into the apartment, suggesting that the Defendant was already familiar with him as a drug customer.

A magistrate is entitled to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense, and "in the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Orozco*, 576 F.3d 745, 749 (7th Cir. 2009) (brackets and quotation marks omitted). It was reasonable for the judge to believe that there was fair probability that written or electronic records of drug transactions would be located at the apartment, as Detective Chambers stated. (Aff. 5 (stating that in his experience as police officer, Detective Chambers had "learned that drug traffickers typically keep track of their drug transactions via written, typed, printed or computer records").) These are items that a reasonably prudent person would expect to be

present, even if no drug deal had just occurred. It was also reasonable to believe that the gun the CI saw would still be at the apartment. These are not consumable or perishable items. The Defendant wanted the Affidavit to pinpoint when the CI saw the gun, but does not indicate how the missing detail relates to his argument that the Affidavit was not sufficient to establish probable cause. Detective Chambers stated that, based on his training and experience, it was common for drug traffickers to possess firearms on their persons or in their homes, and it was reasonable for the judge to rely on his statements.

The Court finds that the Affidavit contained sufficient detail to allow the judge to reasonably conclude that the suspected drug activity was ongoing, and that a search of the apartment would uncover evidence of such drug trafficking.

**C.     Search of the Safe**

The Search Warrant authorized the Fort Wayne Police Department to enter the apartment on Third Street and "diligently search for the following described evidence":

> Heroin and/or derivatives thereof, United States Currency, firearms and/or weapons, records of drug transactions and/or other financial information related to drug trafficking, United States currency used to purchase controlled substances by the Fort Wayne Police Department prior to the execution of this warrant, and cellular phones . . . , which constitutes evidence of alleged drug transactions and illegal possession of said controlled substances.

(Search Warrant, ECF No. 18-1.)

The Defendant asserts that because the Affidavit contained no information regarding a safe, that a second warrant was required to unlock and search the safe officers found inside the Third Street apartment. The law does not require police to anticipate every type of storage container within a targeted residence where the items they are searching for might be kept. The

8

Search Warrant authorized police to search anywhere within the apartment where drug-related items, currency, and firearms might be located or hidden. As the Supreme Court has held, "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820–21 (1982). For example, "a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found." *Id.* at 821. Accordingly, there is no merit to the Defendant's argument that the police were required to obtain a separate search warrant for the safe.

D.   **Good-Faith Exception**

"A magistrate's determination of probable cause 'is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.'" *United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005) (quoting *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999)); *see also United States v. Farmer*, 543 F.3d 363, 377 (7th Cir. 2008) (holding that a reviewing court will "defer to the determination of the warrant-issuing judge that probable cause existed so long as 'there is substantial evidence in the record supporting the judge's decision'" (quoting *United States v. Koerth*, 312 F.3d 862, 865 (7th Cir. 2002))). The Defendant has not pointed to any defect in the Affidavit that, when read as a whole in a realistic and common sense manner, would justify

9

overruling the judge's determination that there existed "a fair probability that contraband or evidence of a crime [would] be found" at the Third Street apartment. *Gates*, 462 U.S. at 238.

Moreover, even were this not the result, the Court would not apply the exclusionary rule, the purpose of which is to deter future Fourth Amendment violations, *Herring v. United States*, 555 U.S. 135, 141 (2009) (citing *United States v. Calandra*, 414 U.S. 338, 347–55 (1974)), and is intended to be a court's "last resort" and not its "first impulse," *Id.* at 140–41 (quotation marks omitted). In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that the Fourth Amendment's exclusionary rule does not bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is later held to be defective. *Id.* at 905. An officer's decision to obtain a warrant creates a presumption that he was acting in good faith. *Mykytiuk*, 402 F.3d at 777. The good-faith exception does not apply where the issuing magistrate abandons her detached and neutral role, where the officers seeking the warrant were dishonest or reckless in preparing the affidavit, or where those officers could not have had an objectively reasonable belief in the existence of probable cause. *United States v. Dumes*, 313 F.3d 372, 380–81 (7th Cir. 2002). None of those circumstances exists here, and the Defendant has failed to rebut the presumption of good faith.

## CONCLUSION

For the reasons stated above, the Court DENIES the Defendant's Motion to Suppress [ECF No. 15].

SO ORDERED on October 20, 2016.

    s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT